Robert V. Prongay (SBN 270796)
  *rprongay@glancylaw.com*
Charles Linehan (SBN 307439)
  *clinehan@glancylaw.com*
**GLANCY PRONGAY WOLKE & ROTTER LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Plaintiff Cory Burnell, BP Investment LLC, and Blueprint Moderate Portfolio LP*

[Additional Counsel on Signature Page]

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORY BURNELL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BLACKROCK TCP CAPITAL CORP., RAJ VIG, PHIL TSENG, and ERIK L. CUELLAR,<br><br>Defendants. | Case No. 2:26-cv-01102-AB-DFM<br><br>**CORY BURNELL, BP INVESTMENT LLC, AND BLUEPRINT MODERATE PORTFOLIO LP'S MEMORANDUM OF LAW IN OPPOSITION TO THE OTHER MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL**<br><br>Date: May 8, 2026<br>Time: 10:00 a.m.<br>Crtrm.: 7B - 7th Floor<br>Judge: Hon. Andre Birotte Jr. |

Lead Plaintiff Movants Cory Burnell, BP Investment LLC, and Blueprint Moderate Portfolio LP ("The Burnell Group") submits this memorandum of law in opposition to the two competing motions for appointment as lead plaintiff and approval of lead counsel filed by other purported class members (Dkt. Nos. 16, 19). The Burnell Group should be appointed as lead plaintiff and its selection of counsel should be approved because it has the largest financial interest, and it and its counsel are adequate to represent the class.

## I. INTRODUCTION

Three movants filed competing motions for appointment as lead plaintiff and approval of lead counsel pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"): The Burnell Group (Dkt. No. 14); Matthew and Thea Zuliani (the "Zulianis") (Dkt. No. 19); and Michael and Dianne Echlin (the "Echlins") (Dkt. No. 16). However, the Echlins have effectively abandoned their motion by filing a notice conceding that they do not have the largest financial interest. *See* Dkt. No. 23.

The PSLRA directs the Court to appoint the "most adequate plaintiff" as lead plaintiff—*i.e.*, the movant or group "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA further provides a rebuttable presumption that the most adequate plaintiff is the plaintiff or movant that, *inter alia*, has the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only by a showing that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As demonstrated in The Burnell Group's memorandum of law in support of its lead plaintiff motion (Dkt. No. 15), The Burnell Group has the largest financial interest in the relief sought by the class. The Burnell Group purchased and retained 315,442 shares during the class period, and suffered a recoverable last in, first out ("LIFO") loss of $410,854. *See* Dkt. No. 17-3. While the Zulianis claim in their

THE BURNELL GROUP'S MEMORANDUM OF LAW IN OPPOSITION TO THE OTHER MOTIONS FOR
APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL

1

motion papers to have lost more than $700,000, much of that loss is not recoverable because it is the result of "in and out" transactions—*i.e.*, shares that were purchased and then quickly sold without being held over any corrective disclosures. Courts often exclude losses on such shares because the losses are not caused by the alleged fraud. Once unrecoverable losses are properly excluded, their loss is only $354,889. As such, The Burnell Group has the largest financial interest and is the presumptively "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

Since The Burnell Group is the presumptively most adequate plaintiff, and the presumption has not been rebutted, The Burnell Group should be appointed as lead plaintiff, and its selection of lead counsel should be approved.

## II. THE BURNELL GROUP IS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF BECAUSE IT HAS THE LARGEST FINANCIAL INTEREST

The Burnell Group satisfies all three requirements to be the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). First, The Burnell Group filed a timely motion for appointment as lead plaintiff. *See* Dkt. No. 14; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa). Second, The Burnell Group satisfies the requirements of Rule 23, as demonstrated in its memorandum of law in support of its lead plaintiff motion. *See* Dkt. No. 15 at 7-9; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Finally, as explained *infra*, The Burnell Group has the largest financial interest in the relief sought by the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

Since the PSLRA does not mandate any particular method for determining which movant has the largest financial interest, district courts are free to choose any method that is "both rational and consistently applied." *See In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002). Courts in this Circuit generally consider the four *Olsten-Lax* factors to determine financial interest, which include: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and

THE BURNELL GROUP'S MEMORANDUM OF LAW IN OPPOSITION TO THE OTHER MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL

2

(4) the approximate losses suffered. *See Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015).

Most courts consider financial loss—the fourth factor—to be the most important. To calculate loss courts generally match purchases to sales in a last in, first out (LIFO) basis. *See Waterford Twp. Police v. Mattel, Inc.*, 2017 WL 10667732, at *5 (C.D. Cal. Sept. 29, 2017).

When calculating loss, there has been a nationwide trend towards excluding losses that are the result of shares purchased and sold without any corrective disclosure between the purchase and sale—sometimes referred to as "in and out transactions" or "pre-disclosure sales"—in line with the Supreme Court's holding in *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336 (2005)*.* Specifically, in *Dura*, the Supreme Court held that losses on shares sold prior to any corrective disclosure were not caused by the alleged fraud (and are therefore not recoverable). *See Dura*, 544 U.S. 336 at 342 ("[If] the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."); *see also Perlmutter v. Intuitive Surgical, Inc.*, 2011 WL 566814, at *5 (N.D. Cal. Feb. 15, 2011) (recognizing that under *Dura* and Ninth Circuit authority applying *Dura*, "losses which occur prior to corrective disclosures are not caused by a defendant's misrepresentations and are, therefore, not recoverable.").

Accordingly, the majority of courts nationwide that have addressed this issue have applied *Dura* to exclude pre-disclosure sales from the movants' LIFO loss calculations. *See Stephens v. Maplebear Inc.*, 2024 WL 3262617, at *3 (N.D. Cal. July 1, 2024) ("[F]ollowing the Supreme Court's holding in *Dura* . . . district courts have generally excluded losses incurred from pre-disclosure stock sales."); *Peters v. Twist Bioscience Corp.*, 2023 WL 4849431, at *4 (N.D. Cal. July 28, 2023) ("District courts also . . . give effect to the Supreme Court's guidance in *Dura*" by "excluding losses incurred from pre-disclosure stock sales"); *Peacock v. Dutch Bros, Inc.*, 2023 WL 4976814, at *4 (S.D.N.Y. Aug. 3, 2023) ("[T]he LIFO methodology excludes

THE BURNELL GROUP'S MEMORANDUM OF LAW IN OPPOSITION TO THE OTHER MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL

3

losses incurred from 'in-and-out' transactions."); *Skeels v. Piedmont Lithium Inc.*, 2022 WL 1236797, at *4 (E.D.N.Y. Feb. 4, 2022) ("Courts in this Circuit, thus, apply *Dura* to adjust LIFO calculations by removing any losses arising from securities bought and sold before the defendant's corrective disclosure.") (collecting cases); *Rodriguez v. DraftKings Inc.*, 2021 WL 5282006, at *5 (S.D.N.Y. Nov. 12, 2021) ("[T]he LIFO methodology excludes 'in-and-out' trades.").

Moreover, applying *Dura* to exclude unrecoverable losses from movants' loss calculations is consistent with the PSLRA and the Ninth Circuit's holding in *Cavanaugh*, which recognized that "the district court must compare the financial stakes of the various plaintiffs and determine which one has ***the most to gain from the lawsuit***." *Cavanaugh*, 306 F.3d at 730 (emphasis added); *see also Intuitive Surgical*, 2011 WL 566814, at *6 ("[O]ne's 'interest' in a litigation is rather directly tied to what one might recover.").

While most courts consider loss to be the most important factor, some courts in the Ninth Circuit have considered the second factor, net shares, to be determinative of financial interest. *See, e.g.*, *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) (concluding net shares purchased should be used to determine financial interest); *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1108 (N.D. Cal. 2001) ("Under this approach, the number of net shares purchased during the class period is determinative."). This is, in part, a recognition of the fact that loss may overstate a movant's financial interest if loss includes shares that were not held over a corrective disclosure.

Here, The Burnell Group has the largest financial interest as measured by three of the four *Olsten-Lax* factors, including loss and retained shares:

| Movant | Gross Shares Purchased | Net Shares Purchased | Net Expenditure | Loss |
|---|---|---|---|---|
| The Burnell Group | 315,442 | **315,442** | **$1,741,634** | **$410,854** |
| The Zulianis | **427,422** | 180,448 | $1,405,339 | $354,889 |
| The Echlins | 12,100 | 12,100 | $110,350 | $58,813 |

THE BURNELL GROUP'S MEMORANDUM OF LAW IN OPPOSITION TO THE OTHER MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL

4

The Zulianis only prevail under gross shares purchased, which is the "least important" factor since it is the least demonstrative of a movant's financial interest. *See Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 476 (S.D.N.Y. 2011).

While the Zulianis claim a loss of $726,028 in their motion papers, much of that loss is not recoverable because they include substantial losses from shares they purchased and then sold in the middle of the class period, before any corrective disclosure. *See, e.g.*, Dkt. No. 19-2 at 27-28 (the Zulianis loss chart, showing losses on sales in September through December of 2025 corresponding to shares that were purchased earlier in 2025—none of which were held over a corrective disclosure). As such, their claimed loss figure is illusory. When losses that are not actually attributable to the fraud at issue are properly excluded according to *Dura*, The Burnell Group has the largest loss.

Moreover, even if the Court were to credit the Zulianis' inflated loss figure, in that case "*Dura* suggests that the Court should weigh the retained shares factor more heavily to determine the movants' financial interests" since retained shares would be more indicative of the movants' potential recovery. *See Loftus v. Primero Mining Corp.*, 2016 WL 11741138, at *5 (C.D. Cal. May 12, 2016). Here, The Burnell Group purchased the most net (*i.e.* retained) shares.

Since The Burnell Group has the largest financial interest, satisfies the requirements of Rule 23, and filed a timely motion, The Burnell Group is the presumptively most adequate plaintiff to be appointed as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

**III. THE PRESUMPTION THAT THE BURNELL GROUP IS THE MOST ADEQUATE PLAINTIFF HAS NOT BEEN REBUTTED**

The lead plaintiff presumption may be rebutted only upon "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

THE BURNELL GROUP'S MEMORANDUM OF LAW IN OPPOSITION TO THE OTHER MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL

5

No proof has been presented that The Burnell Group would be inadequate or subject to unique defenses. In fact, The Burnell Group is an ideal lead plaintiff candidate. Mr. Burnell has an MBA from the University of Texas at Tyler. He has been managing his investments since 1999, and is a hedge fund portfolio manager and business consultant. Mr. Burnell is also the sole owner of BP Investment LLC, which is the sole general partner of Blueprint Moderate Portfolio LP. *See* Dkt. No. 15 at 9.

While Mr. Burnell submitted a corrected certification (*see* Dkt. No. 17-2), this is not disqualifying. *See Blake v. Canoo Inc.*, 2022 WL 599504, at *7 (C.D. Cal. Feb. 18, 2022) ("[M]inor or inadvertent mistakes made in a sworn certification do not strike at the heart of Rule 23's adequacy requirement.") (citation omitted); *see also Pampena v. Musk*, 2023 WL 3082341, at *3 (N.D. Cal. Apr. 24, 2023) (similar, appointing a movant that "failed to include all his shares in his initial PSLRA certification").

As such, The Burnell Group should be appointed as lead plaintiff, and no other movant is entitled to consideration. *See Cavanaugh*, 306 F.3d at 732 ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status.").

## IV. THE LEAD PLAINTIFF'S CHOICE OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). *See also Cavanaugh*, 306 F.3d at 732 n.11 ("Congress gave the lead plaintiff . . . the power to select a lawyer for the class.").

Here, The Burnell Group has selected Glancy Prongay Wolke & Rotter LLP and Holzer & Holzer, LLC to be co-lead counsel. The firms have the expertise, resources, and experience needed to efficiently and effectively conduct this litigation. *See* Dkt. Nos. 17-4, 17-5 (firm résumés). By approving The Burnell Group's selection of counsel, the Court will ensure that the class will receive the highest caliber of legal

THE BURNELL GROUP'S MEMORANDUM OF LAW IN OPPOSITION TO THE OTHER MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL

6

representation. Accordingly, The Burnell Group's selection of lead counsel for the class should be approved.

## V.  CONCLUSION

For the foregoing reasons, The Burnell Group requests that the Court enter an Order: (1) appointing The Burnell Group as Lead Plaintiff; (2) approving Glancy Prongay Wolke & Rotter LLP and Holzer & Holzer, LLC as Co-Lead Counsel for the class; and (3) denying the competing motions.

DATED:  April 17, 2026                    Respectfully submitted,

**GLANCY PRONGAY WOLKE & ROTTER LLP**

By:   *s/ Charles H. Linehan*

Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email:  clinehan@glancylaw.com

**HOLZER & HOLZER, LLC**
Corey D. Holzer
211 Perimeter Center Parkway, Suite 1010
Atlanta, Georgia 30346
Telephone: (770) 392-0090
Facsimile: (770) 392-0029

*Counsel for Cory Burnell, BP Investment LLC, and Blueprint Moderate Portfolio LP and Proposed Co-Lead Counsel for the Class*

THE BURNELL GROUP'S MEMORANDUM OF LAW IN OPPOSITION TO THE OTHER MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL

7

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Cory Burnell, certifies that this brief contains 2,070 words, which complies with the word limit of L.R. 11-6.1.

DATED: April 17, 2026

*s/ Charles H. Linehan*
Charles H. Linehan

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old. On April 17, 2026, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 17, 2026, at Los Angeles, California.

_s/ Charles H. Linehan_
Charles H. Linehan