Lisa T. Omoto SBN 303830
E-mail: lomoto@faruqilaw.com
**FARUQI & FARUQI, LLP**
1901 Avenue of the Stars, Suite 1060
Los Angeles, CA 90067
Telephone: 424-256-2884
Facsimile: 424-256-2885

James M. Wilson, Jr. (*pro hac vice* pending)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email:  jwilson@faruqilaw.com

Robert W. Killorin (admitted *pro hac vice*)
**FARUQI & FARUQI, LLP**
3565 Piedmont Road NE Building Four
Suite 380
Atlanta, GA 30305
Telephone: 404-847-0617
Facsimile: 404-506-9534
Email: rkillorin@faruqilaw.com

*Attorneys for Proposed Lead Plaintiffs Matthew Zuliani and Thea Zuliani*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORY BURNELL, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BLACKROCK TCP CAPITAL CORP., RAJ VIG, PHIL TSENG, and ERIK L. CUELLAR,<br><br>Defendants. | Case No. 2:26-cv-01102-AB-DFM<br><br>**MATTHEW ZULIANI AND THEA ZULIANI'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL**<br><br><u>**CLASS ACTION**</u><br><br>Judge: Hon. André Birotte Jr.<br>Hearing Date: May 8, 2026<br>Time: 10:00 a.m.<br>Courtroom: 7B, 7th Floor |

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................4

I.  THE ZULIANIS HAVE THE LARGEST LIFO LOSSES AND THE BURNELL GROUP'S ARGUMENTS TO APPLY DIFFERENT TESTS TO MEASURE FINANCIAL INTEREST SHOULD BE REJECTED ...................................................................................................4

    A.  The Court Should Look To The Movants' LIFO Losses As Originally Advocated By The Burnell Group ........................................4

    B.  The Court Should Not Adopt the Burnell Group's Modified *Dura* Loss Methodology To Measure The Movants' Financial Interests ......5

    C.  The Zulianis Are Not In-And-Out Traders As Argued By The Burnell Group ...................................................................................9

    D.  Net Shares Is Not An Appropriate Metric To Measure The Movants' Financial Interests .......................................................10

II.  THE BURNELL GROUP FAILS THE ADEQUACY REQUIREMENT UNDER RULE 23 .................................................................................12

    A.  The Burnell Group Failed To Be Upfront With The Court About Mr. Burnell's Prior Serious Misconduct ..........................................12

    B.  The Burnell Group's Certification Errors Weigh Against Their Adequacy .......................................................................................13

III.  THE ZULIANIS ARE MORE THAN ADEQUATE AND TYPICAL UNDER RULE 23 AND THEIR SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL SHOULD BE APPROVED .............................14

CONCLUSION ....................................................................................................15

**MATTHEW ZULIANI AND THEA ZULIANI'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL**
**Case No. 2:26-cv-01102-AB-DFM**

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Africa v. Jianpu Tech. Inc.*,
   No. 21-CV-1419 (JMF), 2021 WL 1999467 (S.D.N.Y. May 19, 2021)..............6

*Blake v. Canoo Inc.*,
   No. CV 21-2873 FMO, 2022 WL 599504 (C.D. Cal. Feb. 18, 2022)................13

*Bodri v. GoPro, Inc.*,
   No. 16-cv-00232-JST, 2016 WL 1718217 (N.D. Cal. Apr. 28, 2016).........4, 5, 6

*Brown v. China Integrated Energy, Inc.*,
   No. CV 11-02559 MMM, 2011 WL 13609003 (C.D. Cal. Aug. 29, 2011).......10

*In re Cassava Scis., Inc. Sec. Litig.*,
   342 F.R.D. 413 (W.D. Tex. 2022) .................................................................10

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
   No. 5:11-CV-04003-LHK, 2012 WL 78780 (N.D. Cal. Jan. 9, 2012)................5

*City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*,
   No. 20-cv-9132 (AJN), 2021 WL 396343 (S.D.N.Y. Feb. 4, 2021) ...................6

*Clifton v. Willis*,
   No. 22-cv-03161-DDD-JPO, 2024 WL 1508832 (D. Colo. Mar. 5, 2024) .......13

*Cook v. Allergan PLC*,
   No. 18 Civ. 12089 (CM), 2019 WL 1510894 (S.D.N.Y. Mar. 12, 2019)............7

*In re Critical Path, Inc. Sec. Litig.*,
   156 F. Supp. 2d 1102 (N.D. Cal. 2001).................................................7, 11, 12

*Dura Pharms. v. Broudo*,
   544 U.S. 336 (2005)...............................................................................6, 7

*Loftus v. Primero Mining Corp.*,
   No. CV 16-01034-BRO (RAOx),
   2016 WL 11741138 (C.D. Cal. May 12, 2016)...............................................12

*Markette v. XOMA Corp.*,
   No. 15-cv-03425-HSG, 2016 WL 2902286 (N.D. Cal. May 13, 2016)...............7

ii

*Melucci v. Corcept Therapeutics Inc.*,
  No. 19-CV-01372-LHK, 2019 WL 4933611 (N.D. Cal. Oct. 7, 2019) ...............3

*In re Network Associates, Inc. Securities Litigation*,
  76 F. Supp. 2d 1017 (N.D. Cal. 1999)...............................................................11

*Nicolow v. Hewlett Packard Co.*,
  No. 12-05980 CRB, 2013 WL 792642 (N.D. Cal. Mar. 4, 2013)..................5, 11

*Pace v. Quintanilla*,
  No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) .........5

*Pampena v. Musk*,
  No. 22-cv-05937-CRB, 2023 WL 3082341 (N.D. Cal. Apr. 24, 2023).............13

*Peacock v. Dutch Bros, Inc.*,
  No. 23 Civ. 1794 (PAE), 2023 WL 4976814 (S.D.N.Y. Aug. 3, 2023) ..............8

*Perlmutter v. Intuitive Surgical, Inc.*,
  No. 10-CV-03451-LHK, 2011 WL 566814 (N.D. Cal. Feb. 15, 2011) ...............8

*Peters v. Twist Bioscience Corp.*,
  No. 5:22-cv-08168-EJD, 2023 WL 4849431 (N.D. Cal. July 28, 2023) .............8

*Plaut v. Goldman Sachs Grp., Inc.*,
  No. 18-CV-12084, 2019 WL 4512774 (VSB) (S.D.N.Y. Sept. 19, 2019)..........8

*Richardson v. TVIA, Inc.*,
  No. C 06 06304 RMW, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) .........5, 10

*Rodriguez v. DraftKings Inc.*,
  No. 21 Civ. 5739 (PAE), 2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021) ..........14

*Sigman v. NuScale Power Corp.*,
  No. 3:23-cv-01689-IM, 2024 WL 727253 (D. Or. Feb. 22, 2024) ....................11

*In re Silicon Storage Tech., Inc., Sec. Litig.*,
  No. C 05-0295 PJH, 2005 WL 8186824 (N.D. Cal. May 3, 2005)......................9

*Skeels v. Piedmont Lithium Inc.*,
  No. 21-CV-4161 (LDH) (PK), 2022 WL 1236797 (E.D.N.Y. Feb. 4, 2022) ......8

*Sneed v. AcelRx Pharms., Inc.*,
  No. 21-cv-04353-BLF, 2021 WL 5964596 (N.D. Cal. Dec. 16, 2021) ............12

iii

**MATTHEW ZULIANI AND THEA ZULIANI'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL**
**Case No. 2:26-cv-01102-AB-DFM**

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008) ................................................................10

*In re WatchGuard Sec. Litig.*,
No. C05-678JLR, 2005 WL 8188936 (W.D. Wash. July 13, 2005) ......6, 7, 8, 11

*Weiss v. Friedman, Billings, Ramsey Grp., Inc.*,
No. 05-CV-04617 (RJH), 2006 WL 197036 (S.D.N.Y. Jan. 25, 2006) .............11

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B) ...............................................................................14, 15

iv

Matthew Zuliani and Thea Zuliani ("the Zulianis") respectfully submit this reply memorandum of law to the opposition filed by the Burnell Group ("Burnell Group Opp.") (ECF No. 24) and in further support of its motion for an Order: (1) appointing the Zulianis as Lead Plaintiffs in the above-captioned action; (2) approving the Zulianis' selection of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel for the Class; and (3) granting such other relief as the Court may deem just and proper.[1]

### INTRODUCTION

The Zulianis, a group comprised of husband and wife, should be appointed lead plaintiff in this Action because they are the only movants that meet all of the requirements of the PSLRA: (i) they have the largest interest in the case with losses of $726,028.54 using the traditional LIFO method for calculating losses, **AND** (ii) they meet the adequacy and typicality requirements of Rule 23.  Zulianis' Opening Br. 6-11, Exs. B & D.

The Burnell Group does not meet these requirements: it reported LIFO losses lower than the Zulianis and, as uncovered by the Zulianis, the Burnell Group fails the adequacy requirement of Rule 23. Mr. Burnell demonstrated a lack of

---

[1]   All capitalized terms not defined herein have the same meaning as those terms in the Memorandum of Points and Authorities in Support of Matthew Zuliani and Thea Zuliani's Motion for Appointment as Lead Plaintiffs and Approval of Lead Counsel ("Zulianis' Opening Br.") (ECF No. 19-1) and the Zulianis' Memorandum of Law in Opposition to the Competing Motion for Appointment as Lead Plaintiffs and Approval of Lead Counsel ("Zulianis' Opp.") (ECF No. 25). All citations and internal quotation marks are omitted and all emphases are added unless otherwise noted. The "Omoto Decl." is defined as the Declaration of Lisa T. Omoto in Support of Matthew Zuliani and Thea Zuliani's Motion for Appointment as Lead Plaintiffs and Approval of Lead Counsel.  ECF No. 19-2.

1

**MATTHEW ZULIANI AND THEA ZULIANI'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL**
**Case No. 2:26-cv-01102-AB-DFM**

candor when he failed to voluntarily disclose to the Court previous serious financial misconduct.  Zulianis' Opp. 9-11. Further he filed a materially incorrect PSRLA certification which he had to later correct. *Id.* at 12.

There is a presumption in favor of the Zulianis being appointed Lead Plaintiffs under the PSLRA.   In a feeble attempt to overcome that presumption, the Burnell Group now argues after initially reporting solely its LIFO losses, that the Court should ignore the well-accepted standard of using LIFO losses to determine the movant with the largest losses and instead adopt a hybrid-LIFO loss methodology that benefits the Burnell Group.  The Burnell Group claims this is justified because the Zulianis sold a portion of their Blackrock TCP stock during the Class Period. Burnell Group Opp. 3–5. This argument should be rejected.

The current complaint alleges that Defendants made a partial corrective disclosure and therefore reduced some of the inflation built into the stock price before it all came out at the end of the class period. Cmplt. ¶¶6-7, 30-31. Investors that sell some of their shares after a partial corrective disclosure, but during the Class Period, still suffer damages – but it may not be the full amount of damages that would be suffered if there were no partial disclosure involved, depending on the particulars, which can only be properly evaluated by an event study.  Any attempt to discard the well-accepted LIFO calculation at this stage where there was a partial disclosure alleged, but no event study to test whether it had a statistically significant impact on damages would be improper.  The LIFO calculation has been adopted by the Courts because it is a way to quickly estimate the losses of the various movants for purposes of comparison so that the Court can make a timely appointment of a Lead Plaintiff as required by the PSLRA.  Moreover, any suggestion that the Zulianis did not suffer huge losses is belied by the undisputed

fact that they retained 180,448 shares through the first corrective disclosure on February 27, 2025, and 215,588 shares through the final corrective disclosure on January 23, 2026, unquestionably suffering very substantial losses.  Omoto Decl., Ex. B; Complaint ¶¶6-10.[2, 3]

The Burnell Group also attempts to divert the Court from the single most important factor, which is LIFO losses, to instead focus on the movants' "retained shares", because it argues that that measure would, under *Dura,* more accurately reflect a movant's potential recovery. Burnell Group Opp. 5. However, courts reject the "net shares" or "retained shares" methodology where, as here, there is a partial disclosure alleged.  This is because the "net shares" or "retained shares" methodology assumes a constant fraud premium, but a partial disclosure causes the fraud premium to fluctuate.  *See Melucci v. Corcept Therapeutics Inc.*, No. 19-CV-01372-LHK, 2019 WL 4933611, at *3 (N.D. Cal. Oct. 7, 2019).

Even if the Court were to agree to use a non-standard methodology that reduces the Zulianis' loss estimate (there has been no attempt adjust for market or peer group movement on the day, or disentangle confounding information), the Court should not appoint the Burnell Group because of its inadequacies under Rule 23 to serve in a representative capacity.  As discussed in detail in the Zulianis' opposition, the Burnell Group is inadequate to serve as Lead Plaintiff for the following reasons:

---

[2]    Even if the Court were to adjust their losses as argued by the Burnell Group, the Zulianis suffered losses of $354,889.

[3]    On April 17, 2026, the Echlins, who reported lesser approximate LIFO losses than the Zulianis of $58,683.00, filed a notice acknowledging that "it appears that at least one movant asserts larger financial interests in the relief sought by the class than the Echlins." ECF No. 23.

MATTHEW ZULIANI AND THEA ZULIANI'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL
Case No. 2:26-cv-01102-AB-DFM

1) Burnell's prior misconduct in the securities industry;

2) The Burnell Group's repeated failure to disclose Burnell's past securities industry misconduct; and

3) The errors in Burnell's PSLRA certification he filed with the initial complaint, which the Burnell Group failed to meaningfully explain for assurances against a repeat of such errors.

Zulianis' Opp. 4-6, 9-12.

At bottom, the Zulianis possess the largest financial interest in the relief sought by the class and are the only remaining movants who otherwise satisfy the requirements of Rule 23. Accordingly, the Zulianis should be appointed Lead Plaintiffs.

## ARGUMENT

**I.    THE ZULIANIS HAVE THE LARGEST LIFO LOSSES AND THE BURNELL GROUP'S ARGUMENTS TO APPLY DIFFERENT TESTS TO MEASURE FINANCIAL INTEREST SHOULD BE REJECTED**

### A.    The Court Should Look To The Movants' LIFO Losses As Originally Advocated By The Burnell Group

The Burnell Group moved to be appointed lead plaintiff claiming losses of $410,854.12. *See* Burnell Group Opening Br. 5-6. After the opening lead plaintiff motions were filed and the Burnell Group realized the Zulianis' had the largest LIFO losses of $726,028.54, the Burnell Group for the first time argued that this Court should not rely on the well-accepted LIFO loss model for determining the Lead Plaintiff, but should instead apply a different "*Dura*-adjusted" loss calculation model. *Id.* at 3-5. This Court should reject this new argument. *Bodri v. GoPro, Inc.*, No. 16-cv-00232-JST, 2016 WL 1718217, at *3 (N.D. Cal. Apr. 28, 2016) (rejecting a movant's attempt to change its loss calculation methodology

4

because it did so "[o]nly after the parties filed their opening briefs, and the parties were made aware of how their respective motions would fare under this methodology . . . .")

"The weight of authority puts the most emphasis on the competing movants' estimated losses, using a [LIFO] methodology." *Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013); *see also Pace v. Quintanilla*, No. SACV 14-2067-DOC (RNBx), 2014 WL 4180766, at *2 (C.D. Cal. Aug. 19, 2014) ("The PSLRA does not specify how to calculate the 'largest financial interest,' but the approximate losses suffered are the most determinative."); *Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007) ("[C]ourts consider the fourth factor, the approximate losses suffered, as most determinative in identifying the plaintiff with the largest financial loss."); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 5:11-CV-04003-LHK, 2012 WL 78780, at *4 (N.D. Cal. Jan. 9, 2012) ("Courts applying the Olsten test generally place the greatest emphasis on the last of these factors[,]" i.e., approximate losses).

This Court likewise should determine which movant has the largest financial interest in the outcome of this case based on the movants' reported LIFO losses as originally argued by the Burnell Group.

**B.    The Court Should Not Adopt the Burnell Group's Modified *Dura* Loss Methodology To Measure The Movants' Financial Interests**

The Burnell Group argues in its opposition brief that the Court should apply a modified *Dura* loss calculation and disregard the Zulianis' "pre-disclosure sales" of BlackRock TCP. Burnell Group Opp. 3-5. However, the application of this sort of modified *Dura* loss calculation is not warranted under the allegations of the

5

Complaint and would not render a more accurate picture of recoverable losses. Other courts regularly reject the sort of modified *Dura* calculation under the circumstances like those here where a partial corrective disclosure is alleged during the Class Period. *See e.g.*, *In re WatchGuard Sec. Litig.*, No. C05-678JLR, 2005 WL 8188936, at *4 (W.D. Wash. July 13, 2005) (rejecting a *Dura* application where there was a fluctuating fraud premium from partial disclosures); *Africa v. Jianpu Tech. Inc.*, No. 21-CV-1419 (JMF), 2021 WL 1999467, at *2 (S.D.N.Y. May 19, 2021) (finding that "courts have been reluctant to apply *Dura* at the appointment-of-lead-plaintiff stage if a case involves multiple disclosures . . . .").

Preliminarily, the Burnell Group's newfound reliance on *Dura* in its opposition is disingenuous, given that in its initial motion papers, it did not rely on an analysis of losses under *Dura* when arriving at their $410,854.12 loss total. Burnell Group Opening Br. 5. The fact that the Burnell Group changed its proposed methodology from LIFO to a *Dura* LIFO or recoverable loss methodology, "counsels in favor of adopting the LIFO methodology." *Bodri*, 2016 WL 1718217, at *3; *see also City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, No. 20-cv-9132 (AJN), 2021 WL 396343, at *4 (S.D.N.Y. Feb. 4, 2021).

It is premature to conduct a *Dura* analysis (or any time consuming analysis that would trigger a "battle of the experts") at the lead plaintiff stage given the corrective disclosures alleged. *Dura* merely held that at the pleading stage an allegation that "the price on the date of purchase was inflated because of the misrepresentation" was insufficient to meet the loss causation element of a claim under § 10(b) of the Exchange Act. *Dura Pharms. v. Broudo*, 544 U.S. 336, 342-43 (2005). The Supreme Court reasoned that a "tangle of factors" affects the market

6

price of a security; thus "the most logic alone permits . . . is that the higher purchase price will sometimes play a role in bringing about a future loss." *Id.* at 343. The Supreme Court "did not suggest that a court should guess about the effect of [] as-yet-unknown factors in selecting a lead plaintiff, nor did it consider the issue." *WatchGuard*, 2005 WL 8188936, at *4 n.6.  Consequently, courts are understandably wary of excluding losses from sales made prior to corrective disclosures at the lead plaintiff stage as "the appropriateness of employing *Dura* analysis at the lead plaintiff stage is subject to considerable dispute." *Cook v. Allergan PLC*, No. 18 Civ. 12089 (CM), 2019 WL 1510894, at *3 (S.D.N.Y. Mar. 12, 2019).

Moreover, the Burnell Group's reliance on *Dura*, or the "recoverable loss" methodology, rather than an approximate LIFO approach to assess financial interest is particularly inappropriate where—as here—a partial disclosure of Defendants' fraud created a fluctuating fraud premium.  The fraud premium refers to "the amount by which the stock is inflated because of the alleged misrepresentations[.]" *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1107-08 (N.D. Cal. 2001). "[T]he fraud premium may remain constant" or "may fluctuate during the class period." *WatchGuard*, 2005 WL 8188936, at *2.  The fraud premium remains constant when "a single disclosure reveals a purported fraud . . . across the class period, meaning the artificial inflation of the price of the security did not dissipate." *Markette v. XOMA Corp.*, No. 15-cv-03425-HSG, 2016 WL 2902286, at *6 (N.D. Cal. May 13, 2016). Conversely, the fraud premium fluctuates when it "var[ies] over time" because "market forces" such as "partial disclosures" either "interact[ed] with" or "ameliorate[d] the effect of the fraud during the class period[.]" *WatchGuard*, 2005 WL 8188936, at *2.

7

Thus, when the truth is incrementally revealed through a partial disclosure, the fraud premium fluctuates, and courts prefer to consider a movant's approximate losses because this measure "yields an estimated financial stake that is independent of the fraud premium, whether constant or not," rather than *Dura* recoverable losses, which assume a constant fraud premium. *Id.* at *3; *see also Plaut v. Goldman Sachs Grp., Inc.*, No. 18-CV-12084, 2019 WL 4512774 (VSB), at *4 (S.D.N.Y. Sept. 19, 2019) (courts are "reluctant" to apply *Dura* at the lead plaintiff stage where the "complaint alleges multiple partial disclosures over the course of the Class Period").[4]

The allegations in the initial complaint strongly suggest that the fraud premium may have changed during the Class Period as a result of the partial corrective disclosure on February 27, 2025 that the Company's "debt investments on non-accrual status at cost increased by 289% (from 3.7% to 14.4% of the portfolio)," its net asset value "had fallen 22.44% year over year to $9.23 per share," and its "[t]otal losses, both realized and unrealized, were revealed to have ballooned to $194,895,042 for the fiscal year, a 186% increase year over year, in large part due to a newly added $72.3 million net unrealized loss within the fourth quarter." Complaint ¶¶ 6, 30. This news caused the stock to fall $0.90, or 9.64% that day. *Id.* ¶¶ 7, 31.

---

[4] The Burnell Group's following authorities are inapposite because they involved a single corrective disclosure at the end of the class period: *Peters v. Twist Bioscience Corp.*, No. 5:22-cv-08168-EJD, 2023 WL 4849431, at *2, *4 (N.D. Cal. July 28, 2023); *Peacock v. Dutch Bros, Inc.*, No. 23 Civ. 1794 (PAE), 2023 WL 4976814, at *7 (S.D.N.Y. Aug. 3, 2023); *Skeels v. Piedmont Lithium Inc.*, No. 21-CV-4161 (LDH) (PK), 2022 WL 1236797, at *4 (E.D.N.Y. Feb. 4, 2022); *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 WL 566814, at *1, *3-6 (N.D. Cal. Feb. 15, 2011). Burnell Group Opp. 3-4.

**MATTHEW ZULIANI AND THEA ZULIANI'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL**
**Case No. 2:26-cv-01102-AB-DFM**

At this early stage of the litigation, and in light of the partial corrective disclosure that may have caused the fraud premium to change, as well as the fact that the Burnell Group originally opted to rely on LIFO losses, the Court should determine which movant possesses the largest financial interest based on their claimed LIFO losses without the adjustments or recalculations advocated by the Burnell Group.

## C.   The Zulianis Are Not In-And-Out Traders As Argued By The Burnell Group

The Burnell Group's argument that the Zulianis should be treated like "in-and-out" traders is disingenuous at best and should be rejected. Burnell Group Opp 3-4.

So-called "in-and-out" transactions generally involve trades where an investor purchased stock at the allegedly fraudulently inflated price and sold its entire position shortly thereafter and before the corrective disclosure. *See In re Silicon Storage Tech., Inc., Sec. Litig.*, No. C 05-0295 PJH, 2005 WL 8186824, at *2 (N.D. Cal. May 3, 2005). Often times, in-and-out traders are day traders. The mere fact that the Zulianis sold just *some* of their shares after a partial corrective disclosure and before the Class Period-ending corrective disclosure does not qualify their transactions as "in-and-out." The Zulianis sold 7,860 shares **and continued to hold 180,448 shares** of BlackRock TCP before the first alleged corrective disclosure on February 27, 2025. Omoto Decl., Ex. B.  From that point forward, until the second and final alleged corrective disclosure on January 23, 2026, the Zulianis sold 239,114 shares **and continued to hold 215,588 shares of BlackRock TCP through the 90-day lookback period.** *Id.*

Courts have found that similar trading patterns are not disqualifying as in-

9

and-out transactions. *See e.g., Brown v. China Integrated Energy, Inc.*, No. CV 11-02559 MMM (PLAx), 2011 WL 13609003, at *10 (C.D. Cal. Aug. 29, 2011) (finding that a movant's transactions were not "in and out" because "[w]hile [movant] made several sales of China Integrated stock early in the class period, it continued to hold the bulk of its shares through" the corrective disclosure); *In re Cassava Scis., Inc. Sec. Litig.*, 342 F.R.D. 413, 419 (W.D. Tex. 2022) (finding that movant did not engage in in-and-out trading where he "never completely liquidated his stock")

### D.    Net Shares Is Not An Appropriate Metric To Measure The Movants' Financial Interests

The Burnell Group asks the Court to appoint it lead plaintiff based on its "net shares" or "retained shares".  Burnell Group Opp. 4-5.  This argument also should be rejected.

As a general matter, "courts consider the fourth factor, the approximate losses suffered, as most determinative in identifying the plaintiff with the largest financial loss" and will appoint movants who have greater approximate losses but less net shares. *Richardson*, 2007 WL 1129344; *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 395-96 (S.D.N.Y. 2008) (movant with higher losses but lower net shares than competing movant had largest financial interest in the litigation).

Moreover, the "net shares" or "retained shares" methodology is particularly inapplicable here because it ignores how Defendants' February 27, 2025 partial corrective disclosure caused the fraud premium to fluctuate during the Class Period. Burnell Group Opp. 4-5. And "[w]here the fraud premium fluctuates, neither the gross nor the net number of shares purchased is a good indicator of

10

financial loss, since the loss depends on how large the fraud premium was at the time of the purchase." *WatchGuard*, 2005 WL 8188936, at *3.

Other district courts are in accord, "observ[ing ] net shares purchased and a retained shares calculation a[s] less useful analytical tools where gradual disclosures are involved, because those methods assume a constant fraud premium throughout the class period." *Nicolow*, 2013 WL 792642, at *4; *Sigman v. NuScale Power Corp.*, No. 3:23-cv-01689-IM, 2024 WL 727253, at *4–5 (D. Or. Feb. 22, 2024) ("because this case involves two separate disclosures, this Court cannot presume that there was a consistent, single fraud premium during the class period. The net shares purchased approach is thus inapplicable here; the focus here must be on the movants' approximate losses."); *Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, No. 05-CV-04617 (RJH), 2006 WL 197036, at *4 (S.D.N.Y. Jan. 25, 2006) ("the fact that [a movant] has prevailed here on the second *Lax* factor (net shares purchased) diminishes in importance upon the realization that, here, partial corrective disclosures were reaching investors on a periodic basis").

To be sure, *In re Network Associates, Inc. Securities Litigation*, the very case the Burnell Group relies on to justify applying a "net shares" or "retained shares" methodology (Burnell Group Opp. 4), adopted the approach *only because* there was a "constant fraud premium" resulting from a single corrective disclosure at the end of the class period. 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999). The court even cautioned that considering metrics other than approximate losses "gets into trouble . . . if the amount of the fraud premium varied over the course of the class period" through partial disclosures. *Id.* Likewise, in *Critical Path*, another authority cited by the Burnell Group (Burnell Group Opp. 4), the court found that "the number of [the movant's] net shares . . . [wa]s determinative" because "the

11

**MATTHEW ZULIANI AND THEA ZULIANI'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL**
Case No. 2:26-cv-01102-AB-DFM

fraud premium . . . stayed constant throughout the class period," as there was only one corrective disclosure at the end of the class period.  156 F. Supp. 2d at 1107–08.  The court also noted that "losses suffered by selling shares during the class period. . . . are recoverable, and . . . should be included" in the movant's total loss calculation.  *Id.* at 1108.[5]

## II.    THE BURNELL GROUP FAILS THE ADEQUACY REQUIREMENT UNDER RULE 23

Hypothetically speaking, even if the Burnell Group did have larger LIFO losses than the Zulianis, the Burnell Group should not be appointed lead plaintiff because it cannot meet the adequacy requirement of Rule 23.

### A.    The Burnell Group Failed To Be Upfront With The Court About Mr. Burnell's Prior Serious Misconduct

Mr. Burnell had two opportunities to disclose his extensive securities industry misconduct but failed to do so. His prior misconduct goes directly to his honesty and trustworthiness and renders him unfit to serve as a fiduciary on behalf of a class of investors who suffered damages as a result of alleged violations of federal securities laws.  The Burnell Group's continued failure to be forthcoming with the Court about this past misconduct demonstrates its inadequacy and is disqualifying.  *See e.g., Sneed v. AcelRx Pharms., Inc.*, No. 21-cv-04353-BLF, 2021 WL 5964596, at *4 (N.D. Cal. Dec. 16, 2021) (declining to appoint movant who "did not disclose the offenses in his own motion" which were only brought to

---

[5]    In the Burnell Group's other authority, *Loftus v. Primero Mining Corp.*, the court did not appoint the movant with higher retained shares because that movant's "approximate losses [we]re calculated at an amount less than any other movant[.]" No. CV 16-01034-BRO (RAOx), 2016 WL 11741138, at *5 (C.D. Cal. May 12, 2016).

12

the court's attention because the competing movants "identified the issue for the Court in their own papers"); *Clifton v. Willis*, No. 22-cv-03161-DDD-JPO, 2024 WL 1508832, at *3-5 (D. Colo. Mar. 5, 2024), *report and recommendation adopted*, No. 1:22-cv-03161-DDD-JPO, 2024 WL 1508831 (D. Colo. Mar. 26, 2024).

### B.    The Burnell Group's Certification Errors Weigh Against Their Adequacy

Finally, Burnell's inaccurate sworn PSLRA certification, filed with the initial complaint (ECF No. 1)—where he attributed 49 BlackRock TCP transactions made by BP Investment LLC to himself—further demonstrates the Burnell Group's inadequacy. The Group does not dispute the error, acknowledging it only in a footnote in its lead plaintiff motion papers more than two months later. ECF No. 15 n.1.[6]

Additionally, the Burnell Group's claim, in opposition, that it "submitted a corrected certification" further undermines its claim that it is an adequate representative for the class.  *See* Burnell Group Opp. 6.  Indeed, when the Burnell

---

[6]    The Burnell Group's authorities involved discrepancies in the movant's PSLRA Certification that were far more inconsequential.  *See e.g., Blake v. Canoo Inc.*, No. CV 21-2873 FMO (JPRx), 2022 WL 599504, at *6 (C.D. Cal. Feb. 18, 2022) (the movant's "initial certification stated that he had 'reviewed the initial complaint filed in this action[,]' even though the certification was dated one day prior to [plaintiff's] filing the complaint that initiated this action" and the movant explained that he "'authorized the filing of a complaint that he and his counsel anticipated would be the first-filed[,]' and thus he was referring to the complaint he expected would be filed in this action"); *Pampena v. Musk*, No. 22-cv-05937-CRB, 2023 WL 3082341, at *3 (N.D. Cal. Apr. 24, 2023) ("The Group therefore has not miscalculated its losses but rather did not adjust [a group member's] losses in the same manner as" the competing movant). Burnell Group Opp. 6.

13

**MATTHEW ZULIANI AND THEA ZULIANI'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL**
**Case No. 2:26-cv-01102-AB-DFM**

Group submitted a supplemental Certification, it did not bother to retract the original PSLRA Certification and it did not identify its new PSLRA Certification as a "corrected" version of its original Certification, as it now represents.  ECF No. 17-2; *see also* Burnell Group Opp. 6.  These "inconsistencies . . . .  speak[] to a level of carelessness that rightly calls into doubt [its] adequacy" and "weigh[s] heavily against [its] appointment as lead plaintiff." *Rodriguez v. DraftKings Inc.*, No. 21 Civ. 5739 (PAE), 2021 WL 5282006, at *9 (S.D.N.Y. Nov. 12, 2021).  This belated and cavalier response only heightens concerns about its adequacy.

**III.    THE ZULIANIS ARE MORE THAN ADEQUATE AND TYPICAL UNDER RULE 23 AND THEIR SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL SHOULD BE APPROVED**

In addition to having the largest financial interest, the Zulianis also meet the typicality and adequacy requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see* Zuliani Opening Br. 8-11; Zulianis Opp. 8-9. The Zulianis acquired BlackRock TCP securities during the Class Period, suffered damages as a result of the alleged false and misleading statements made by Defendants and possess claims against Defendants under the federal securities laws therefore satisfying the typicality requirements.  Zulianis' Opening Br. 9-11. The Zulianis have a strong professional background, have each been investing for approximately thirty years and manage their own investments. *See* Omoto Decl., Ex. D ¶¶ 5-6, 9-10.

The Zulianis' interests are perfectly aligned with—and by no means antagonistic to—the Class and have selected and retained highly competent and experienced counsel —the Faruqi Firm—to litigate claims on behalf of itself and the Class.  *See* Omoto Decl., Ex. E, Faruqi Firm resume (ECF No. 19-2).

14

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the Zulianis are entitled to select and retain Lead Counsel for the Class, subject to the Court's approval.

As described in its Opening Brief, the Zulianis have selected the Faruqi Firm to be Lead Counsel for the Class, a minority-owned and woman-owned law firm. *See* Omoto Decl. Ex. F (ECF No. 19-2). The Faruqi Firm possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. *See* Zulianis' Opening Br. 11-14; Omoto Decl. Ex. E.

## CONCLUSION

Accordingly, the Zulianis respectfully request that the Court: (1) appoint the Zulianis as Lead Plaintiffs for the Action; (2) approve their selection of the Faruqi Firm as Lead Counsel; and (3) grant such other relief as the Court may deem just and proper.

Dated: April 24, 2026   Respectfully submitted,

By: /s/ *Robert W. Killorin*
   Robert W. Killorin

Robert W. Killorin (admitted *pro hac vice*)
**FARUQI & FARUQI, LLP**
3565 Piedmont Road NE Building Four
Suite 380
Atlanta, GA 30305
Telephone: 404-847-0617
Facsimile: 404-506-9534
Email: rkillorin@faruqilaw.com

**FARUQI & FARUQI, LLP**
Lisa T. Omoto SBN 303830
**FARUQI & FARUQI, LLP**
1901 Avenue of the Stars, Suite 1060
Los Angeles, CA 90067
Telephone: 424-256-2884
Facsimile: 424-256-2885
E-mail: lomoto@faruqilaw.com

15

James M. Wilson, Jr. (*pro hac vice* pending)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email:   jwilson@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiffs Matthew Zuliani and Thea Zuliani and [Proposed] Lead Counsel for the Class*

16

**MATTHEW ZULIANI AND THEA ZULIANI'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL**
**Case No. 2:26-cv-01102-AB-DFM**

## CERTIFICATION UNDER LOCAL RULE 11-6.1

The undersigned, counsel of record for Proposed Lead Plaintiffs Matthew Zuliani and Thea Zuliani, certify that this brief contains 4,274 words, which complies with the word limit of L.R. 11-6.1.

Date: April 24, 2026

**FARUQI & FARUQI, LLP**

By: */s/ Robert W. Killorin*
Robert W. Killorin

17